IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| John Bernhard, | ) |
| Plaintiff, | ) |
| vs. | ) Civil Action No. 09-813 |
| TRC Global Solutions, Inc., | ) |
| Defendant. | ) |

AMBROSE, District Judge

# OPINION
# AND
# ORDER OF COURT

Plaintiff, John Bernhard ("Plaintiff" or "Bernhard"), brought this action against Defendant TRC Global Solutions, Inc. ("Defendant" or "TRC"), alleging employment discrimination on the basis of age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"), and the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* ("PHRA"). Defendant has filed a motion for summary judgment in an attempt to dismiss Plaintiff's claims. (Docket No. 23). Plaintiff opposes Defendant's motion. After careful consideration of the parties' submissions and for the reasons set forth below, Defendant's motion is denied.

## I. INTRODUCTION

### A. Factual Background

Unless otherwise indicated, the following material facts are undisputed.

1

Defendant TRC Global Solutions, Inc., provides third-party relocation services for both the new and existing employees of businesses. TRC generates business by contacting prospective clients, providing information about TRC's services, negotiating rates and terms of service, and then executing a contract. Paul Haislmaier formed TRC, and he served as the company's president from 1987 through 2006.

Haislmaier met Plaintiff at a conference, and they subsequently became friends. In 1991, Plaintiff began providing services for TRC on a commission basis in the Pittsburgh area. Haislmaier and Plaintiff had an arrangement in which Plaintiff would contact Pittsburgh corporations and attempt to sell TRC's relocation services. Plaintiff would then turn over the corporations' information to TRC, and TRC would follow up on these leads. Plaintiff's employment had no definitive timeframe or agreed upon date for termination.

Plaintiff also operated a business called Bernhard Realty. Plaintiff claims that he was the owner and the only person involved in Bernhard Realty. TRC disputes this characterization and claims that Plaintiff ran Bernhard Realty as an independent contractor who at one point contracted to provide relocation services for RRI, another relocation service provider. With respect to RRI, Plaintiff asserts that he performed some services without compensation for RRI prior to 1994. Plaintiff also provided financial services for a variety of clients, including Advisors Capitol Management.

TRC alleges that Plaintiff, with the exception of sales meetings, could choose his own hours, the number of hours he worked, whether he employed

assistants, the companies he cold-called, and the number of companies that he cold-called. Plaintiff admits that TRC did not impose required work hours or minimum contact requirements, but states that none of the members of TRC's sales team were required to punch in or punch out, or log the hours that they worked. Michelle Wiggetman, later hired as the leader of the sales team, testified that, while the sales team was expected to work full-time hours, usually from eight-thirty in the morning until five o'clock at night, there was absolutely no method to track the employees' hours. If any sales person hired an assistant, TRC would only pay for the assistant if the hiring was pre-approved.

Additionally, the sales team members worked from their homes, and Plaintiff performed his services from his Bernhard Realty offices. TRC did not pay for or contribute toward the cost of Plaintiff's office. TRC purchased a computer and monitor for Plaintiff's use. Plaintiff states that prior to 2000, he was paid directly, and 1099s were issued in his name. From 2000 through the time that his services were discontinued, all of his commissions were paid to Bernhard Realty. TRC did not afford Plaintiff any employee benefits, such as insurance, sick days, or vacation days. TRC also did not withhold any taxes from Bernhard Realty's commission checks, and Plaintiff paid self-employment taxes on commissions paid by TRC.

Plaintiff's name was included on internal company documents along with the names of other employees, including a telephone directory, and Plaintiff was held out as an employee of TRC on marketing materials. Plaintiff points to his business cards as evidence that he held three different titles while employed by

TRC. He also points to deposition testimony that other members of TRC's sales team held the position of Director of Global Business Development. TRC disagrees, claiming that Plaintiff created his own titles solely for his independent contractor "door- knocker" services.

The sales team members' services, including Plaintiff's, were not supervised on a daily basis. The sales team members also were required to use their own initiative to identify new clients and generate business. Although Defendant asserts that Plaintiff did not have a direct supervisor at TRC to whom he was required to report and that no one dictated the terms of his provision of services, Plaintiff claims that he reported to Paul Haislmaier and that an organizational chart shows him reporting to Michelle Wiggetman.

Defendant further alleges that Plaintiff was not treated like the other employees because Haislmaier and Wiggetman did not have the right to control how Plaintiff performed his cold-calls. Plaintiff disagrees, claiming that he was provided with outlines to use during his presentations to prospective clients, and that Haislmaier provided him with potential clients.

In October 2006, Haislmaier hired Douglas Berto as Vice President to oversee the sales force and "learn the business." Berto testified that one of the first things he identified that TRC needed was a full time sales force with a sales leader. In 2007, TRC hired Michelle Wiggetman as a sales leader on Berto's recommendation. Wiggetman was born in 1970 and is thirty years younger than Plaintiff who was born in 1940. Berto eventually was promoted to the position of President and Haislmaier took the position of Chief Executive Officer. At this time,

Berto, with Haislmaier's approval, formulated a reorganization plan that called for a full-time sales team.

Berto testified that he did not consider hiring Plaintiff as a full time sales employee because Plaintiff did not show any desire, effort, or knowledge regarding what to do to bring a prospective client to contract signing. Berto also testified that Plaintiff admitted to him that he was uncomfortable with doing more than initiating client contact. Berto advised Haislmaier that in his opinion Plaintiff should be terminated.[1] In January 2008, Berto called Plaintiff and informed him his services would no longer be needed. Plaintiff testified that Berto also told him that he was not attending all of the sales meetings and not producing appointments like the rest of the sales force. The following Sunday, Plaintiff spoke to Haislmaier who allegedly stated that Plaintiff was not sufficiently "gung ho." Plaintiff testified that he did not believe Haislmaier was lying about the reasons for his termination but that he also did not believe that Haislmaier was telling the complete truth.

TRC did not hire anyone new after deciding no longer to use Plaintiff's services; rather, Wiggetman assumed the responsibility for providing the services in the Pittsburgh area that Plaintiff formerly provided. Plaintiff also claims that at some unidentified point in time prior to his termination, Haislmaier made a statement about looking for a "young or younger sales force."

---

[1] Berto testified that Plaintiff was performing up to the expectations that were historically set, and that he did not inform Plaintiff that he was not living up to Berto's own expectations. Wiggetman likewise has no recollection ever discussing Plaintiff's performance with him. Wiggetman also does not recall ever informing Plaintiff that his services would be terminated if he did not increase his production. Haislmaier testified that he dealt with Plaintiff "many many times" and that Plaintiff was failing to generate business prospects.

5

## B. Procedural History

On or about July 8, 2008, Plaintiff filed a charge alleging age discrimination with the Equal Employment Opportunity Commission ("EEOC").[2] The EEOC issued a Dismissal and Notice of Rights letter to Plaintiff on or about March 27, 2009. Plaintiff then filed a Complaint against Defendant in this Court on June 23, 2009. (Docket No. 1). Defendant filed its Answer and Affirmative Defenses on August 24, 2009. (Docket No. 10). On May 4, 2010, Defendant filed the instant Motion for Summary Judgment and supporting materials (Docket Nos. 23-26). Plaintiff then filed a Brief in Opposition to Defendant's Motion, a Responsive Concise Statement of Material Facts, and Appendix on June 3, 2010. (Docket Nos. 27-29). On June 17, 2010, Defendant filed a Reply Brief, a Response to Plaintiff's Concise Statement of Material Facts, and a Supplemental Appendix. (Docket Nos. 32-34). The motion is now ripe for my review.

## II. LEGAL ANALYSIS

### A. Standard of Review

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case,

---

[2] The parties disagree as to whether Plaintiff also filed a charge with the Pennsylvania Human Relations Commission ("PHRC").

6

and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, this Court must examine the facts in a light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d Cir. 1987). The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex, 477 U.S. at 322. Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324. Summary judgment must therefore be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988) (quoting Celotex, 477 U.S. at 322).

## B. Plaintiff's Employment Status

Plaintiff alleges that TRC violated the ADEA by discharging him because of his age. TRC argues that it is entitled to summary judgment as to Plaintiff's ADEA claim, because the ADEA does not protect Plaintiff due to his status as an independent contractor and not an employee.

The ADEA provides that "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment because of such individual's age." 29 U.S.C. § 623(a). Although the ADEA protects employees, it does not protect independent contractors. See EEOC v. Zippo Mfg. Co., 713 F.2d 32, 35 (3d Cir. 1983). In this case, both parties agree that I should analyze Plaintiff's employment status using the common-law agency test summarized by the United States Supreme Court in Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323 (1992) ("Darden test"). The Supreme Court defined the Darden test as follows:

> In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

Id. at 323-24 (quoting Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730,

751-52 (1989)).

Although the issue in Darden was whether the plaintiff was an employee for purposes of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1371, the ADEA, like ERISA, does not helpfully define "employee." Darden, 503 U.S. at 322. In Darden, the Supreme Court applied the well-established principle that Congress intends to incorporate the common law meaning of a term when it does not define it in a statute, and determined that Congress intended "employee" to mean "the conventional master-servant relationship as understood by common-law agency doctrine." Id. The Court thus held that where a statute containing "employee" does not helpfully define it, Congress intends an agency law definition unless it clearly indicates otherwise. Id. at 322-23. Several courts have concluded that the holding in Darden should be applied to employment discrimination cases because it has a broad implication for statutory construction. See, e.g., Wilde v. County of Kandiyohi, 15 F.3d 103, 105-106 (8th Cir.1994) (Title VII); Frankel v. Bally, Inc., 987 F.2d 86, 90-91 (2d Cir.1993) (ADEA); Walker v. Corr. Med. Sys., 886 F. Supp. 515, 520 (W.D. Pa. 1995) (Title VII) (Ambrose, J.); Verdecchia v. Douglas A. Prozan, Inc., 274 F. Supp. 2d 712, 720 (W.D. Pa. 2003) (ADEA).

Courts must analyze and weigh all of the Darden elements with no one factor being decisive. Darden, 503 U.S.at 324 (quoting NLRB v. United Ins. Co. of Am., 390 U.S. 254, 258 (1968)). Furthermore, determination of an employee's status requires a consideration of the totality of the circumstances. Alba v. Hous. Auth. of City of Pittston, 400 F. Supp. 2d 685, 692 (M.D. Pa. 2005) (citing Frankel,

987 F.2d at 90 (2d Cir.1993)). As this Court held in Walker, however, the Darden test places the most emphasis on the hiring party's right to control the manner and means by which the work is accomplished. Walker, 886 F. Supp. at 521.

Examining the facts in the light most favorable to Plaintiff, there are genuine issues of material fact regarding several of the Darden elements. Most significantly, there are genuine issues of material fact as to TRC's right to control the manner and means by which Plaintiff's work was accomplished. TRC alleges that it did not treat Plaintiff like the other employees because Haislmaier and Wiggetman did not have the right to control how Plaintiff performed his cold-calls. Plaintiff disagrees, claiming that TRC provided him with outlines to use during his presentations to prospective clients, and that Haislmaier provided him with potential clients. Additionally, although Defendant asserts that Plaintiff did not have a direct supervisor at TRC to whom he was required to report and that no one dictated the terms of his provision of services, Plaintiff states that he reported to Haislmaier and that an organizational chart shows him reporting to Wiggetman. Because there are genuine issues of material fact regarding this element and several other Darden elements, summary judgment in favor of TRC is denied on this issue.

### C. Age Discrimination - ADEA

Plaintiff alleges that TRC violated the ADEA by discharging him because of his age. TRC alleges that it is entitled to summary judgment as to Plaintiff's ADEA claim because Plaintiff cannot establish either direct or indirect evidence of age discrimination.

The ADEA provides that "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment because of such individual's age." 29 U.S.C. § 623(a). In this case, both parties agree that I should analyze Plaintiff's ADEA claim using the familiar burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under that framework, plaintiff first must establish a *prima facie* case of discrimination. If the plaintiff succeeds, the burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. If the defendant meets this minimal burden, then the plaintiff must prove, by a preponderance of the evidence, that the articulated reason was mere pretext for discrimination. Id. at 802; Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997). Throughout this analysis, however, the burden of proving intentional discrimination rests with the plaintiff. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993).

### 1. *Prima Facie* Case

In order to establish a *prima facie* case of age discrimination under the ADEA, a plaintiff must demonstrate that: (1) he is at least forty years of age; (2) he is qualified for the position in question; (3) he suffered an adverse employment decision; and (4) his replacement was sufficiently younger to permit a reasonable inference of age discrimination or the adverse action otherwise occurred under circumstances that create an inference of discriminatory motive. See McDonnell

Douglas, 411 U.S. at 802; Hill v. Borough of Kutztown, 455 F.3d 225, 247 (3d Cir. 2006); Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003). In this case, there is no dispute as to the first and third prongs of the *prima facie* case. Plaintiff was in the protected class because he was sixty-seven at the time of his termination, and he suffered an adverse employment action when he was terminated. Defendant argues that summary judgment on Plaintiff's ADEA claim is appropriate, however, because Plaintiff cannot satisfy the second and fourth prongs of the *prima facie* case. I disagree.

Examining the facts in the light most favorable to Plaintiff, there is a genuine issue of material fact regarding whether Plaintiff is qualified for the position and can satisfy the second prong of the *prima facie* case. A district court cannot make credibility determinations or weigh the evidence. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Id. Here, TRC argues that it did not "perceive" Plaintiff as qualified for a full time sales position because of his alleged inability or lack of desire to go beyond initial client contact and learn to close deals. Def.'s Br. Supp. at 8. TRC cites Haislmaier's deposition testimony as evidence that Haislmaier dealt with Plaintiff "many many times" on this issue and that Plaintiff did not change his performance. Id. Plaintiff, however, counters with Wiggetman's testimony that she does not recall ever discussing Plaintiff's performance or production with him or informing him that his services would no longer be utilized if he did not increase his production. Pl.'s Br. Opp. at 5. Plaintiff also cites Berto's testimony that he never informed Plaintiff

12

that he was not fulfilling Berto's expectations.  The contradictory testimony as to whether TRC informed Plaintiff of the additional duties it wished him to perform creates a genuine issue of material fact as to whether Plaintiff was aware of these additional expectations.  TRC does not point to any evidence that Plaintiff was unqualified to perform these additional duties had he been aware of them.  Whether or not TRC perceived Plaintiff as unqualified or Plaintiff was qualified but chose not to perform the additional expected duties are questions more appropriately suited to the second and third stages of the burden-shifting analysis (legitimate reason and pretext) and not prong two of the *prima facie* case.

Additionally, Plaintiff can satisfy the fourth prong of the *prima* facie case for summary judgment purposes because, viewing the evidence in the light most favorable to Plaintiff, Wiggetman, who is thirty years younger than Plaintiff, assumed the responsibility of providing services in the Pittsburgh area after Plaintiff's discharge.  This age difference is more than sufficient to permit a reasonable inference of age discrimination.  TRC's argument that Plaintiff cannot meet the fourth prong because Wiggetman merely assumed Plaintiff's duties from within and TRC did not *hire* someone to replace Plaintiff is groundless.  See, e.g., Sharp v. Penske Buick GMC, Inc., 686 F. Supp. 2d 530, 537 & n.5 (E.D. Pa. 2010) (fourth prong is satisfied where younger employee who was retained assumed plaintiff's duties) (citing Torre v. Casio, Inc., 42 F.3d 825, 831 (3d Cir. 1994)).

Because there are genuine issues of material fact as to whether Plaintiff can establish a *prima facie* case of age discrimination, TRC's motion for summary

judgment on this issue is denied.

## 2. Legitimate Nondiscriminatory Reason/Pretext

TRC does not adequately address the second and third prongs of the McDonnell Douglas burden-shifting framework (legitimate nondiscriminatory reason and pretext) in its summary judgment papers. In its supporting brief, TRC states that even if Plaintiff was qualified for a full-time sales position, there is no evidence of any connection between the termination decision and his age. TRC, however, does nothing to develop this argument other than to recite Third Circuit law regarding pretext. TRC does not apply the law to the facts or evidence in this case or otherwise meaningfully address these issues. For this reason alone, summary judgment in favor of TRC on the ADEA claim is not appropriate.

In addition, Plaintiff points to evidence that suggests TRC's stated reason for dismissal was mere pretext for discrimination and that summary judgment on his ADEA claim is not warranted. Among other things, Plaintiff points to deposition testimony and other evidence suggesting that although TRC now claims it terminated Plaintiff due to his supposed inability or lack of desire to go beyond initial client contact and learn how to close deals, the company did not give this reason to Plaintiff at the time of the termination or to the EEOC during the administrative process. Pl.'s Br. Supp. at 12-13. Plaintiff also cites evidence that TRC never asked him about his interest in becoming a full-time employee, never hired a full-time sales employee to replace him, never required him to attend training, and never informed him that it expected his job duties to change from those he had historically performed. Id. Finally, Plaintiff points to his

testimony that Haislmaier commented to him at some point prior to his discharge that the organization wanted to employ a "younger" sales force. Id. For this reason as well, summary judgment on this issue is denied.

### D. Age Discrimination - PHRA

Plaintiff alleges that TRC violated the PHRA by discharging him because of his age. TRC alleges that it is entitled to summary judgment as to Plaintiff's PHRA claim, because Plaintiff cannot establish either direct or indirect evidence of age discrimination.

The analysis of an ADEA claim applies equally to an age discrimination claim under the PHRA. See Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996). For the reasons stated in my ADEA analysis, supra, Defendant's motion for summary judgment as to Plaintiff's PHRA claim is denied.

### III. CONCLUSION

For all of these reasons, Defendant's Motion for Summary Judgment is denied.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| John Bernhard,<br><br>        Plaintiff,<br><br>vs.<br><br>TRC Global Solutions, Inc.,<br><br>        Defendant. | Civil Action No. 09-813 |

## ORDER OF COURT

AND NOW, this 13th day of October, 2010, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that Defendant's Motion for Summary Judgment (Docket No. 23) is denied. A Pretrial/Settlement Conference is scheduled for October 18, 2010 at 10:00 a.m. before the undersigned in Courtroom 3B of the U.S. Post Office & Courthouse, 700 Grant Street, Pittsburgh, Pennsylvania. Counsel shall have settlement authority, and parties are to be either present or available by telephone.

                                              BY THE COURT:

                                              /s/ Donetta W. Ambrose
                                              Donetta W. Ambrose
                                              U.S. District Judge